**STATE COLLEGE BOROUGH WATER AUTHORITY**

**v.**

**BOARD OF SUPERVISORS OF HALF-MOON TOWNSHIP, CENTRE COUNTY, PA, Appellant.**

Commonwealth Court of Pennsylvania.

Argued April 6, 1995.

Decided May 22, 1995.

James N. Bryant, for appellant.

R. Timothy Weston, for appellee.

Before SMITH and KELLEY, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

The Board of Supervisors (Board) of Halfmoon Township (Township) appeals an order of the Centre County Court of Common Pleas which struck conditions (4) and (6–10) from the Board's approval of the State College Borough Water Authority's (Authority) conditional use of a site in the township for the development of three wells located in "Well Field No. 2."

Halfmoon Township rests on the surface of a V–shaped, subterranean tub running eastward about eighteen miles to both surface and subsurface drains. The Authority's poor location in relation to the tub necessitated that it obtain permission from the Susquehanna River Basin Commission (Commission) to extract water from the township's subsurface. The Commission was created by the "Susquehanna River Basin Compact," Act of July 17, 1968, P.L. 368, as amended, 32 P.S. §§ 820.1—820.8. The Authority filed a conditional use application with the township on December 14, 1992. The wells it seeks to develop are located in the township in a district zoned A–1 Agricultural. The Halfmoon Township Zoning Ordinance (ordinance) permits public service and public utility uses as conditional uses in this agricultural zone pursuant to the conditions listed in Article 900 of the ordinance. The Authority filed permit applications with the Department of Environmental Resources (DER) and the Susquehanna River Basin Commission (Commission) for permission to withdraw 3.88 million gallons of water per day (mgd) from the three wells located in Well Field No. 2.

On March 25, 1993, DER gave the Authority permission to develop the three wells in Well Field No. 2. On May 13, 1993, the Commission granted the Authority permission to withdraw the requested amount of groundwater from the three wells for distribution for public water supply. In reaching its decision, the Commission determined that "[n]o adverse impacts on other area groundwater withdrawals are anticipated. The project does not conflict with nor adversely affect the Comprehensive Plan, is physically feasible, and does not adversely influence the present or future development of the water resources of the basin." (Commission Findings, p. 3.) No appeal was taken from this decision. On August 12, 1993, after five hearings were held between February and July of that year, the Board approved the Authority's conditional use application with ten conditions.

The Board decided in pertinent part:

1. The conditional use application of the State College Borough Water Authority is approved subject to the following terms and conditions:

 a. State College Borough Water Authority shall before utilizing this water source provide Halfmoon Township Supervisors with the following:

 .  .  .  .  .

(4) The Applicant will agree to repair, deepen or replace any well in service in Halfmoon Township as of December 14, 1992, which goes dry or experiences turbidity problems after the Applicant commences pumping from its well.

 .  .  .  .  .

(6) Prior to pumping in excess of 1.75 mgd, the Applicant will provide interconnects at Applicant's expense to a main line of the following systems:

 (a) Upper Halfmoon Water Company, Inc.;

 (b) Sawmill Acres;

 (c) Bellefonte Borough

(7) In the event of dewatering of any of the above systems, after the interconnect is in place, the Applicant must agree to supply water to the dewatered system at the system's cost.

(8) Evidence of interconnect agreements guaranteeing that the Borough of State College will supply water to any dewatered supplier at that supplier's cost.

(9) All interconnects shall be done at the expense of the State College Borough Water Authority and with pipe of sufficient size to supply the above water suppliers' patrons with their daily requirements in the event of dewatering.

(10) In the event that the pumping limit of 1.75 mgd is declared invalid, it is the decision of the Supervisors that the interconnects be completed prior to any use of the well.[1]

The Authority then appealed to the common pleas court from the imposition of conditions (4) and (6–10). The common pleas court sustained the appeal, deciding that the Board's "imposition of additional conditions . . . constituted an impermissible collateral attack" on the Commission's decision and that DER and the Commission "have the exclusive power to allocate water and regulate the use of water for the public good." (*State College Borough Water Authority v. Board of Supervisors of Halfmoon Township, Centre County, Pa.* (No. 1993–2495, filed August 19, 1994), slip op. at 4. It then struck conditions (4) and (6–10). An appeal to this Court followed.

■ The Board raises two questions for our review. 1) Whether the state legislature, by way of DER and the Susquehanna River Basin Compact (Compact), totally preempted regulation of the use of water for the public good; and 2) whether requiring the Authority to connect to local systems before removing over 1.75 mgd, to be sold to customers living outside the recharge area, is an impermissible collateral attack on the Commission's decision?[2]

In effect, this case presents the interesting and important issue of the extent of the Commission's authority to regulate the use of water resources within its domain in face of the power of local governing bodies to impose conditions on their approvals of conditional use applications pursuant to the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11201.

Before we begin our discussion of the questions the Board raises, we note that DER has the power and duty to issue waterworks permits and to stipulate conditions within those permits for the supply of water to the public. Article XIX–A of the Administrative Code of 1929, § 1918–A, added by the Act of December 3, 1970, P.L. 834, *as amended,* 71 P.S. § 510–18. DER also has the power and duty to "[e]stablish policies for effective water quality control and water quality management in the Commonwealth of Pennsylvania and [to] coordinate and be responsible for the development and implementation of comprehensive public water supply, waste management and other water quality plans." Section 5(b)(2) of The Clean Streams Law, Act of June 22, 1937, P.L.1987, added by the Act of July 31, 1970, P.L. 653, *as amended,* 35 P.S. § 691.5(b)(2). Moreover, we note that the Susquehanna River Basin Compact is an agreement between this Commonwealth, Maryland, New York and the United States relating to the water resources of the basin. 32 P.S. § 820.1.

■ The Board first argues that the common pleas court erred in deciding that the state legislature, through DER and the Compact, preempted local regulation of water use for the public good. In support of its argument, the Board asserts that our decision in *North Penn Water Authority v. Zoning Hearing Board of Worcester Township (North Penn II),* 71 Pa.Commonwealth Ct. 575, 454 A.2d 699 (1983), which affirmed on the Montgomery County common pleas court opinion in *North Penn Water Authority v.*

---

1. One Supervisor wrote separately, stating his opinion that, *inter alia,* "[t]here is no legal basis for the Halfmoon Township Supervisors to regulate whether or not [the Authority] may withdraw water from Halfmoon Township" and "[t]he Halfmoon Township Supervisors have no legal basis for regulating the actions/decisions of The Department of Environmental Resources, The Public Utilities Commission or The Susquehanna River Basin Commission." (Decision of Emil G. Peters, p. 1.)

2. Where the common pleas court has taken no additional evidence, our scope of review is limited to determining whether the Board committed an error of law or a manifest abuse of discretion. *Board of Supervisors of Millcreek Township v. BAC, Inc.,* 137 Pa.Commonwealth Ct. 494, 586 A.2d 1011 (1991).

*Zoning Hearing Board of Worcester Township (North Penn I)*, 24 Pa.D. & C.3d 357 (1981), and upon which the common pleas court here relied, has been "amplified" by our recent decision in *State College Borough Water Authority v. Benner Township*, 165 Pa.Commonwealth Ct. 405, 645 A.2d 394 (1994).

In its brief, the Board refers to that portion of *Benner* in which Judge Silvestri, citing Sections 603, 604 and 913.2 of the MPC,[3] states those sections "are legislative authority to the governing bodies" sanctioning a modification of the Pennsylvania law on springs and wells as set forth in *Rothrauff v. Sinking Spring Water Company*, 339 Pa. 129, 14 A.2d 87 (1940). Judge Silvestri held that governing bodies could modify the *Rothrauff* rule by approving a conditional use for water withdrawal from owned land for sale and distribution off the land through attachment of reasonable conditions to such approval. *Benner*, at 415, 645 A.2d at 399–400. The Board thus argues that DER's and the Commission's power to grant permits does not amount to preemption of the field. The Board further argues that this assertion is bolstered by a review of the Compact, which does not provide that the Commission's powers are all encompassing.

In *North Penn I*, the Worcester Township Zoning Hearing Board denied the North Penn Water Authority's requests for a special exception, building permit and use and occupancy permit after the Delaware River Basin Commission had already approved the Authority's pumphouse and well project and DER had issued a water supply permit. The common pleas court reversed, stating that the zoning hearing board could not regulate the amount of well water withdrawn by the Authority because the issue "is within the exclusive power of [DER] and the Delaware River Basin Commission. Both agencies are specifically designated by statute to determine such matters and issue any permits deemed by them to be appropriate." *Id.* at 367. As stated above, we affirmed in *North Penn II* on the common pleas court opinion.

We do not agree with the Board in this case that our holding in *Benner* affects the *North Penn* decisions and, in turn, our decision here.

*Benner*, in allowing that governing bodies may impose reasonable conditions on the grant of a conditional use application and, in remanding the case to the common pleas court for a determination of what conditions are reasonable, did not address the issue of the scope of the Commission's authority to regulate groundwater withdrawal. It does not mention the Commission or the Compact.[4] Instead, *Benner* addressed a governing body's ability to modify existing common law by way of legislative authority set forth in the MPC. We fail to see, therefore, how *Benner* has any impact on our decision in this case.

The Preamble to the Compact provides in pertinent part:

1. The conservation, utilization, development, management, and control of the water resources of the Susquehanna River Basin under comprehensive multiple purpose planning will bring the greatest benefits and produce the most efficient service in the public interest . . .

.     .     .     .     .

3. The water resources of the basin are presently subject to the duplicating, overlapping, and uncoordinated administration of a large number of governmental agencies which exercise a multiplicity of powers resulting in a splintering of authority and responsibility . . .

Further, in Article 1, § 1.3, the Compact lists among the findings and declarations of the signatory parties' legislative bodies:

1. The water resources of the Susquehanna River Basin are affected with a local, state, regional, and national interest, and the planning, conservation, utilization, development, management, and control of these resources, under appropriate arrangements for intergovernmental cooper-

---

**3.** 53 P.S. §§ 10603 [Ordinance provisions], 10604 [Zoning purposes], and 10913.2 [Governing body's functions; conditional uses].

**4.** This is so even though Benner Township, like Halfmoon Township, is located in Centre County and is likewise under the Commission's auspices.

ation, are public purposes of the respective signatory parties.

3. The water resources of the basin are functionally interrelated, and the uses of these resources are interdependent. *A single administrative agency is therefore essential for effective and economical direction, supervision, and coordination of water resources efforts and programs of federal, state, and local governments* and of private enterprise. (Emphasis added.)

Clearly then, as the Authority maintains, Congress and our state legislature created the Commission in no small part to combat chaos and fragmentation in the management of the basin's water resources. As the Authority also asserts, the Commission, as the single administrative agency empowered to oversee these resources, must approve of all the projects affecting them, subject to certain exceptions not relevant here. Article 3 of the Compact, § 3.10. Such a grant of authority vests the Commission with control over all the water resources within its jurisdiction, and defeats any notion that local governing bodies, such as the Board in this case, may attach conditions to a project it has approved.

This Court, in *Duff v. Township of Northampton*, 110 Pa.Commonwealth Ct. 277, 285–286, 532 A.2d 500, 503–504 (1987), *aff'd* 520 Pa. 79, 550 A.2d 1319 (1988), quoting our Pennsylvania Supreme Court in *Council of Middletown Township v. Benham*, 514 Pa. 176, 180–181, 523 A.2d 311, 313 (1987), stated:

> *The state is not presumed to have preempted a field merely by legislating in it.* The General Assembly must clearly show its intent to preempt a field in which it has legislated.... *The test for preemption in this Commonwealth is well established.* Either the statute must state on its face that local legislation is forbidden, or "*indicate[ ] an intention on the part of the legislature that it should not be supplemented by municipal bodies.*" (Citations omitted.) (Emphasis added.)

Our reading of the Compact as a whole satisfies us the state legislature indicated an intention that local governing bodies should not supplement the Commission's decisions with respect to its authority to manage the basin's water resources. No other conclusion is logical where the Compact evinces a frustration with splintered governmental authority and responsibility, and where the Commission has been given the power to regulate water withdrawals and diversions and to determine what areas should be designated as protected or involved in an emergency situation. *See* Article 11 of the Compact.

Larry Taylor, a hydrogeologist with the Commission, testified that the Commissioners "vote as to whether to approve or disapprove or put conditions on projects within the basin." (Notes of Testimony, N.T., Testimony of Larry Taylor, Hearing of June 3, 1993, pp. 5–6.) He also testified that the Commission's regulations necessitate review of "all withdrawals from surface water that exceed one million gallons per day, all withdrawals from groundwater that exceed 100,000 gallons per day or consumptive uses of greater than 20,000 gallons per day." (N.T., Testimony of Larry Taylor, Hearing of June 3, 1993, p. 6.) The fact that certain amounts of withdrawal are not the subject of the Commission's review cannot be used to reject preemption when the Compact and the regulations show a clear intention to regulate over a certain volume.

In rendering its decision approving the Authority's application to withdraw groundwater, the Commission determined that the Authority must follow the reporting requirements set forth in 18 C.F.R. § 803.62 [Ground-water withdrawals] and the conservation requirements enunciated in 18 C.F.R. § 803.63 [Water Conservation requirements] for public water supply utilities. The Commission also stated that it "reserves the right, based upon new findings, to reopen any project docket and make additional orders that may be necessary to mitigate or avoid adverse impacts or otherwise to protect the public health, safety or welfare." (Commission opinion, p. 4.) This provision for review by the Commission thus affords any resident of Halfmoon Township or of any township or borough with a public water system who may encounter problems because of these new wells a forum for protection and remedy from such problems.

Section 604 of the MPC, 53 P.S. § 10604 provides in pertinent part:

> The provisions of zoning ordinances shall be designed:
>
> (1) To promote, protect and facilitate any or all of the following: the public health, safety, morals, and the general welfare; ... water, ... the provision of a safe, reliable and adequate water supply for domestic, commercial, agricultural or industrial use, and other public requirements; as well as ... preservation of forests, wetlands, aquifers and floodplains.

 We hold today, however, that conditions placed on the grant of a conditional use application by a local governing body *subject to the Commission's authority,* which conditions interfere with the Commission's power to regulate area water resources, are preempted. A review of the conditions imposed by the Board and stricken by the common pleas court reveals that they were all commendable efforts to protect against *future* interference with wells in Halfmoon Township or with certain public water systems. The conditions were to provide that protection by, *inter alia,* instituting an "agreement" that the Authority pay to repair, deepen or replace any well in the township going dry after the Authority began to pump from its well; moreover, before the Authority pumped more than 1.75 mgd, it was to provide interconnects to a main line of various systems. The conditions therefore placed mandatory duties on the Authority which, in the instance of the interconnects, were to be accomplished before the Authority pumped nearly half of the maximum amount the Commission allowed it to pump per day.

If this Court were to allow the imposition of these or any similar conditions by local governing bodies in their desire to protect their residents, we are certain the very mischief the Commission was designed to remedy would yet remain—that is, "a splintering of authority and responsibility." While we hold that the common pleas court properly struck down the Board's conditions, we has-

ten to add that this opinion in no way serves as insulation for the Authority from liability for problems it may cause by the pumping of its well.

Affirmed.[5]

### ORDER

AND NOW, this 22nd day of May, 1995, the order of the Centre County Court of Common Pleas, No. 1993–2495, dated August 19, 1994, is hereby affirmed.

SMITH, J., dissents.

---

**5.** Because we have held that the principle of preemption applies, we need not reach the

Board's second issue.