Eric J. LEVIN and Christine F. Levin

v.

BOARD OF SUPERVISORS OF BENNER TOWNSHIP, CENTRE COUNTY, Pennsylvania, and State College Borough Water Authority and Daniel E. Shawley, Karen S. Shawley, Bibles for the World, Inc.

Appeal of STATE COLLEGE BOROUGH WATER AUTHORITY, Appellant.

STATE COLLEGE BOROUGH WATER AUTHORITY, Appellant,

v.

BOARD OF SUPERVISORS OF BENNER TOWNSHIP, CENTRE COUNTY, Pennsylvania.

STATE COLLEGE BOROUGH WATER AUTHORITY

v.

BOARD OF SUPERVISORS OF BENNER TOWNSHIP, CENTRE COUNTY, Pennsylvania.

Appeal of Eric J. LEVIN and Christine F. Levin, Appellants.

Eric J. LEVIN and Christine F. Levin, Appellants,

v.

BOARD OF SUPERVISORS OF BENNER TOWNSHIP, CENTRE COUNTY, Pennsylvania, and State College Borough Water Authority and Daniel E. Shawley, Karen S. Shawley, Bibles for the World, Inc.

Commonwealth Court of Pennsylvania.

Argued Sept. 15, 1995.

Decided Dec. 28, 1995.

R. Timothy Weston, for appellant, State College Borough Water Authority.

David C. Keiter, for appellants Eric J. and Christine F. Levin.

Ben Novak, for appellee Benner Township.

Before SMITH and KELLEY, JJ., and RODGERS, Senior Judge.

KELLEY, Judge.

Before this court are consolidated cross-appeals by the State College Water Authority (Authority) and Eric J. Levin and Christine F. Levin (Levins), intervenors below, from the January 17, 1995 order of the Court of Common Pleas of Centre County (trial court). The trial court found: (1) that there

was substantial evidence to support the grant of the Authority's conditional use application by the Board of Supervisors of Benner Township (board); and (2) that six conditions challenged by the Authority which were imposed on the grant of the conditional use were reasonable conditions.

This is the second time that this court has heard appeals in this matter. This court previously reversed a February 8, 1993 order of the trial court, which reversed the grant of the conditional use application by the board, and remanded this matter to the trial court to address the following issues:

1. Whether there is substantial evidence to support the grant of the conditional use application by the board to the Authority; and

2. Whether conditions 1, 2, 3, 4, 5, and 14 imposed on the grant of the conditional use are reasonable conditions.

*State College Water Authority v. Board of Supervisors of Benner Township, Centre County*, 165 Pa.Cmwlth. 405, 645 A.2d 394, 400 (1994) (*Benner I*).[1]

The within cross appeals require this court to restate the history of this case as substantially set forth by this court in *Benner I*. On May 10, 1990, the Authority filed an application for a conditional use of its property with the board. Reproduced Record (R.) at 6a. The proposed use of the lots, as set forth in the application, was:

[T]o erect service buildings for the pumping, treatment and distribution of well water. The water sources have currently been drilled, lined and capped.

*Id.* The lots are located in the Airport Commercial Zoning district (C–A District).

The board conducted several hearings spanning a period from September 4, 1990 through December 10, 1991. On December 17, 1991, the board filed its findings of fact, conclusions of law and decision. The board made the following relevant findings of fact.

2. The [Authority's] water service area includes most of State College Borough, and parts of College, Harris, Ferguson and Patton Townships.

. . . .

4. The average daily water demand of the [Authority's] system is 4.53 million gpd. . . .

. . . .

7. [Authority] filed a request for approval of a conditional use on the lots. The proposed use of the lots is to operate a well pumping field to pump water from 3 wells drilled on the lots, to treat the water, and to pump it through pipes to be laid along Airport Road and Foxhill Road, to a connection with [Authority's] presently existing water distribution system. The proposed use contemplates drilling for subterranean or percolating water which is to be pumped to the surface and piped away from the property to supply the public water system of the [Authority].

8. [Authority] has requested permits from the Pennsylvania Department of Environmental Resources ("DER") and the Susquehanna River Basin Commission ("SRBC") to pump up to 3 million gpd out of the wells.[2] The estimated top capacity of the wellfield is 4.6 million gpd.

. . . .

12. It was testified by experts that the proposed pumping operation could possibly have an effect upon water wells located on other properties in the Township. Most occupied properties in the Township are supplied by on-site well water.

1. In *Benner I*, we held that in light of a governing body's authority pursuant to the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101—11201, to attach reasonable conditions and safeguards to the grant of a conditional use, the trial court committed an error of law in concluding that the board lacked authority to impose conditions modifying the *Rothrauff* rule. *See Rothrauff v. Sinking Spring Water Company,* 339 Pa. 129, 14 A.2d 87 (1940) (A property owner may not concentrate waters and convey them off his land if the springs or wells of another landowner are thereby damaged or impaired).

2. The Susquehanna River Basin Commission issued a decision approving the Authority's application for a permit to pump 4.7 million gallons per day on January 23, 1992.

. . . .

15. [Authority] offered and agreed that if any well within the recharge area (as defined in Paragraph 13 above), goes dry or is dewatered after operation of the wellfield commences, it shall be presumed to go dry by reason of the operation of the wellfield and [Authority] shall immediately supply temporary water service within 48 hours and shall extend water mains and all necessary connections to the property at no cost to the property owner. The residents after connection shall pay standard water rates as customers of the [Authority].

. . . .

19. The [Authority] intends to drill wells and pump water from the subterranean and percolating waters under the lands of [Authority], and to transfer the water away, off the lands, into the public water system of the [Authority] to be supplied to meet the water supply needs of the customers of the [Authority].

R. at 661a–66a.

The board, in its decision, imposed sixteen (16) conditions on the grant of the Authority's conditional use. The Authority challenges the following six (6) imposed conditions.

1. *Monitoring.* [Authority] agrees to monitor all wells within one and one half (1½) miles of the well site for any landowner who requests such monitoring. [Authority] shall advertise in a newspaper of general circulation in the Township its offer to install monitoring devices once each year for three successive years. [Authority] shall also send notice to every landowner within one and one half (1½) miles of the well site offering to install a monitoring device at the expense of [Authority]. Such monitoring devices shall be installed upon consent of the landowner for a period of 18 months, and shall be renewable as of right for successive periods at the request of the landowner. Any landowner within the one and one half (1½) miles radius may request monitoring at any time. The Township and the property owner shall be supplied the results of the monitoring. All monitoring devices, installation costs, periodic monitoring, and reporting costs shall be at the expense of [Authority].

2. *Reducing Draw.* If the monitoring of wells pursuant to Condition #1 above reveals a falling of the water table sufficient to adversely effect wells on neighboring lands (or the Benner Spring or other springs of the Pennsylvania Fish Commission in Centre County), then the [Authority] shall reduce the draw of water from the proposed wellfield so as to prevent or cease the adverse effect upon the wells and springs of residents or landowners and the springs of the Pennsylvania Fish Commission.

3. *Well Failure Within One and One Half (1½) Miles from Well Site.* If any landowner's well within one and one-half (1½) miles of the well site fails because of the drop in water level, [Authority] shall provide temporary water service (water buffalo) within at least 48 hours of notice thereof at the cost of the [Authority]. [Authority] also agrees that, unless it can be clearly shown by [Authority] that the well did not go dry by reason of [Authority's] well pumping operation, [Authority] shall extend lines from its well site to the property and connect to the residence or structure to be served, at the cost of [Authority], within three months or as soon as can reasonably be done. Said residents, after connection, shall pay standard water rates for water service.

4. *Wells Beyond One and One–Half Miles from Well Site.* If wells within the one and one-half (1½) miles radius go dry, it shall be presumed that wells beyond the one and one-half (1½) miles distance for the well site which go dry at the same time or thereafter shall be presumed to also go dry by reason of [Authority's] operation, and [Authority] shall immediately supply temporary water service within 48 hours of notification, and shall extend lines to said properties and connect to the residence or structure to be served to replace their water service within three months or as soon as reasonably possible, at the expense of [Authority]. Such residents, after connection, shall pay standard water rates.

5. *Agricultural Rates.* Where landowners engaged in primarily agricultural pursuits are affected pursuant to Conditions 2 or 3 above, and water lines are extended to said landowners' farms to provide water for livestock or crops, said water shall be provided by [Authority] at fifty (50%) percent of the standard water rate.

. . . .

14. *Water Station.* [Authority] shall install at [Authority's] expense, a metered water station for residents or landowners to purchase or obtain water. Said water station shall be located at a location to be agreed upon by [Authority] and the Township within one year of designation of location.

R. at 679a–82a.

Both the Authority and the Levins appealed the board's decision to the trial court. The Levins challenged the granting of the conditional use by the board to the Authority. The Authority appealed the validity of the six (6) conditions outlined above to the trial court. By order of February 8, 1993, the trial court reversed the decision of the board granting the Authority's conditional use application; therefore, the trial court did not address the Authority's appeal regarding the validity of the six challenged conditions. *Benner I*, 645 A.2d at 395.

Subsequently, the Authority filed two appeals with this court. *Id.* The first appeal challenged the reversal by the trial court of the board's decision granting the conditional use and the second appeal raised the validity of the six challenged conditions. *Id.*

As stated previously, this court in *Benner I* reversed the trial court's February 8, 1993 order and remanded the case to the trial court to determine two specific issues. *Id.* at 400. With regard to the Authority's appeal of the validity of the six imposed conditions, this court dismissed the appeal without prejudice to appeal the same issues, in whole or in part, depending on the determination made by the trial court pursuant to this court's remand order. *Id.*

On remand, the trial court determined that there was substantial evidence to support the grant of the conditional use application by the board to the Authority and that the six challenged conditions on the grant of the conditional use were reasonable conditions. It is from that January 17, 1995, order that the Authority and the Levins have filed cross appeals with this court.[3]

 Where the trial court takes no additional evidence subsequent to the board's determination, our scope of review is limited to determining whether the board committed a manifest abuse of discretion or an error of law. *Board of Supervisors, Upper Southampton Township v. Zoning Hearing Board,* 124 Pa.Cmwlth. 103, 555 A.2d 256 (1989). A conclusion that the board abused its discretion may be reached only if its findings are not supported by substantial evidence. *Hoopes v. Zoning Hearing Board of Haverford Township,* 134 Pa.Cmwlth. 26, 578 A.2d 63 (1990), *petition for allowance of appeal denied,* 527 Pa. 655, 593 A.2d 426 (1991).

The issues raised on appeal to this court are:

1. Whether the board's decision granting the conditional use application of the

**3.** We note that the principal brief filed on behalf of the Authority in support of its appeals exceeds the fifty (50) page limit as mandated by Pa.R.A.P. 2135. In addition, the Authority's reply brief filed in response to the board's principal brief as appellee in these appeals exceeds the fifteen (15) page limit. Pa.R.A.P. 2135.

We also note that the board, an appellee in both cross-appeals, has filed a reply brief to the Authority's reply brief. Pa.R.A.P. 2113 provides that an appellant may file a brief in reply to matters raised by appellee's brief not previously raised in appellant's brief. Rule 2113 provides further that the appellee may file a similarly limited brief in reply to the response of the

appellant to issues presented by a cross appeal *if* the appellee has cross-appealed. In these appeals, the board has not filed a cross appeal. Otherwise, no further briefs may be filed except with leave of court. Pa.R.A.P. 2113.

We remind counsel for the parties herein that briefs and reproduced records shall conform in all material respects with the requirements of these rules otherwise they may be suppressed. Pa.R.A.P. 2101. The Pennsylvania Rules of Appellate Procedure were promulgated to govern practice and procedure before the appellate courts and non-compliance with the rules only makes this court's review of appeals more difficult.

Authority is supported by substantial evidence;

2. Whether the conditions imposed by the board on the grant of the Authority's conditional use are reasonable;

3. Whether the board exceeded its authority by attempting to impose conditions relating to water withdrawal, allocation and use, which lie within the exclusive powers of the Susquehanna River Basin Commission and the Pennsylvania Department of Environmental Resources (DER) now known as the Department of Environmental Protection (DEP); [4]

4. Whether the board exceeded its authority by purporting to impose conditions dictating the rates to be charged and the services or improvements to be made by the Authority in contravention of the Municipality Authorities Act of 1945, Act of May 2, 1945, P.L. 382, *as amended*, 53 P.S. §§ 301—401; and

5. Whether board's decision constitutes an impermissible collateral attack on the decision of the Susquehanna River Basin Commission by purporting to impose conditions relating to water withdrawal, allocation and use, where the board evaluated the same issues considered and finally decided by the Commission.

## I. WHETHER THE GRANT OF THE CONDITIONAL USE APPLICATION IS SUPPORTED BY SUBSTANTIAL EVIDENCE

■ An applicant for a conditional use permit has the initial burden of proving compliance with the specific requirements in the zoning ordinance. *Achey Appeal*, 86 Pa. Cmwlth. 385, 484 A.2d 874 (1984), *aff'd*, 509 Pa. 163, 501 A.2d 249 (1985). After an applicant meets his initial burden, the burden is then upon the objectors to the conditional use to show a high degree of probability that the use will adversely impact on the public interest; the mere possibility of adverse impact is not enough. *Id.*

Section 506 of the Benner Township Zoning Ordinance (zoning ordinance) does not permit any use by right in the C–A District; the only uses are by conditional use. R. at 14a. The conditional uses allowed, include, *inter alia*, essential services. *Id.* "Essential Service" is defined in section 202 of the zoning ordinance as:

Facilities for the distribution of utility services including gas, electricity, water, sewerage, telephone and similar services where the facilities are owned and operated by a municipality, or municipal authority or public utility regulated by the Pennsylvania Public utility commission [sic].

R. at 11a.

Section 613(a) of the zoning ordinance, *Conditional Uses and Special Exceptions*, provides that the uses specified as conditional within the district regulations of the zoning ordinance shall be permitted after a review by the planning commission and approval by the board based on the determination that the conditional use is appropriate to the specific location for which it is proposed, consistent with the community development plan, and in keeping with the purposes and intent of the zoning ordinance. R. at 15a. Section 613(b) of the zoning ordinance, *Criteria for Conditional Uses or Special Exceptions*, sets forth the following nine criteria to be used as a guide in evaluating a proposed conditional use:

1. The presence of adjoining similar uses.

2. An adjoining district in which the use is permitted.

3. The need for the use in the area proposed as established by the Comprehensive Plan.

4. Sufficient area to effectively screen the conditional use from adjacent different uses.

5. The use will not detract from the permitted uses of the district.

6. Sufficient safeguards such as parking, traffic control, screening, and setbacks can be implemented to remove any

4. Pursuant to Act 18 of 1995, the Conservation and Natural Resources Act, Act of June 28, 1995, P.L. 89, 71 P.S. §§ 1340.101—1340.1103, the Department of Conservation and Natural Re-sources was created and the Department of Environmental Resources was renamed as the Department of Environmental Protection effective July 1, 1995.

potential adverse influences the use may have on adjoining uses.

7. The notification of abutting property owners.

8. Uses shall meet the provisions and requirements of other applicable Township regulations.

9. Should the applicant fail to obtain the necessary permits within a one year period, or having obtained the permit should he fail to commence work thereunder within such 12 months' period, it shall be conclusively presumed that the applicant has waived, withdrawn, or abandoned his appeal or his application and all provisions, conditional uses and permits granted to him shall be deemed automatically rescinded by the Board of Supervisors.

*Id.*

The Levins contend that the grant of the conditional use to the Authority is not supported by substantial evidence and that the board's determination that the Authority has met the requirements for a conditional use is erroneous. The Levins argue that the nine criteria set forth in section 613(b) of the zoning ordinance are specific ordinance requirements and that the Authority has failed to show that it has met five of these requirements.[5] Therefore, the conditional use should not have been granted to the Authority by the board.

In response, the Authority argues that the grant of the conditional use is supported by substantial evidence. Further, the Authority contends that the zoning ordinance contains only general provisions establishing criteria which serve as a guide to the issuance of conditional uses. Any attempt, the Authority argues, to convert what are clearly denominated guides into immutable standards clearly would be contrary to both the plain language and intent of the zoning ordinance.

The Authority contends that general, non-specific or non-objective requirements in an ordinance dealing with conditional uses are not usually seen as part of the threshold persuasion burden and presentation duty of the applicant. In support of this proposition, the Authority cites *Bureau of Correction v. City of Pittsburgh,* 91 Pa.Cmwlth. 293, 496 A.2d 1361 (1985), *aff'd,* 516 Pa. 75, 532 A.2d 12 (1987); *Bray v. Zoning Board of Adjustment,* 48 Pa.Cmwlth. 523, 410 A.2d 909 (1980); and *In re: Appeal of George Baker,* 19 Pa.Cmwlth. 163, 339 A.2d 131 (1975).[6]

A close reading of the cases cited by the Authority reveals that the above proposition stemmed from attempts to require applicants to prove conformity with a policy statement rather than specific requirements. For example, the Authority contends that an ordinance provision requiring that design be "integrated and compatible with the environment of adjacent and nearby land uses" was held to not be a specific standard in *Appeal of George Baker.*

However, the ordinance "provision" at issue in *Appeal of George Baker* was in reality part of the purpose of the ordinance and was not set out as a separate concrete provision or criteria. Accordingly, this court held that an applicant must meet reasonably definite conditions and that it would be manifestly unfair to require an applicant to prove conformity with a policy statement. *In re: Appeal of George Baker,* 339 A.2d at 135. Any other view, the court stated, would enable the board to assume the legislative role. *Id.*

In the present case, the language of the zoning ordinance mandates that the Authority, as an applicant for a conditional use, meet nine reasonably definite criteria. The plain text of section 613(b) of the zoning ordinance states that "[t]he following criteria shall be used as a guide in evaluating a proposed conditional use." R. at 15a. Thereafter, nine definite criteria are set forth. Clearly, the Authority is not being required to prove conformity with a general policy statement as in *Appeal of George Baker.*

The fact that the zoning ordinance utilizes the term "guide" does not negate the fact that the zoning ordinance contains language

---

**5.** The Levins contend that the Authority has not met requirements 1, 2, 3, 5, and 6.

**6.** The board, as appellee herein, characterizes the criteria as specific and argues that the Authority has met all nine of the criteria.

mandating consideration by the board of nine definite criteria. As stated above, the zoning ordinance provides nine criteria which *shall* be used as a guide in evaluating a proposed conditional use. Accordingly, the nine criteria set forth in section 613(b) of the zoning ordinance are specific standards which the Authority must establish to satisfy its burden for the grant of a conditional use.

■ Therefore, we must examine the record to determine whether the grant of the conditional use by the board to the Authority is supported by substantial evidence.[7] The Levins argue that the grant of the conditional use is not supported by substantial evidence because the board erred in concluding that the Authority met all nine criteria set forth in section 613(b) of the zoning ordinance.

■ First, the Levins argue that the board's conclusion that the first requirement was met is clearly erroneous as there is no evidence whatsoever in the record regarding adjoining similar uses. The first criterion found in section 613(b)(1) of the zoning ordinance requires that the board consider the presence of adjoining similar uses.

The Levins point out that the board found that the use is not inconsistent with adjoining uses and that this is not what the ordinance requires. The zoning ordinance, the Levins argue, requires the presence of adjoining similar uses and presence implies that there actually must be similar uses physically adjoining the proposed use.

With respect to the first criterion, the · board found that the proposed use was not inconsistent with adjoining uses. The board contends, in response to the Levins' arguments, that this was the only fair way to apply this guideline. The board argues that to accept the Levins' argument would result in the absurd holding that a wellfield could not be permitted unless there was already an existing wellfield on the adjoining property. We agree and defer to the board's application of the first requirement.

Second, the Levins argue that the Authority failed to meet the second criterion found in section 613(b)(2) of the zoning ordinance requiring an adjoining district in which the use is permitted. The board found that the same use category is permitted as a conditional use in all adjoining districts. The Levins argue that this interpretation is clearly an error as it is not what the ordinance requires. The Levins contend that the language of section 613(b)(2) of the zoning ordinance can only be construed to be a use permitted by right.

In response, the board argues that once again an acceptance of the Levins' argument would result in an absurd result. The board points out that essential services are permitted in the C–A District and all adjoining districts only by conditional use. Therefore, the Levins' interpretation means that no essential service would be allowed in the C–A District because no essential service was permitted by right in adjoining districts.

Again, we agree with the board's interpretation of the zoning ordinance. It is undisputed that the issue herein is the grant of a conditional use not a use permitted by right. The plain language of the second criterion found in section 613(b)(2) of the zoning ordinance does not restrict the type of use in an adjoining district to one permitted by right or to conditional uses.

Third, the Levins argue that the third criterion found in section 613(b)(3) of the zoning ordinance, requiring the need for the use in the area as established by the comprehensive plan, was not established. The board found that the Township's 1969 comprehensive plan recognizes the importance of having a reliable and safe source of potable water and the development of systems to fulfill this need. The board stated that the comprehensive plan specifically refers to water needs and it does so in the context of regional facilities.

The Levins argue that the board completely ignored the 1991 comprehensive plan that was being developed at the very time that numerous hearings before the board were

---

**7.** Substantial evidence is relevant evidence as a reasonable mind might accept to support a con-
clusion. *Bureau of Corrections.*

taking place. The Levins contend that the 1991 comprehensive plan makes no reference to the Authority as a potential source or utility serving the Township. Further, regardless of which comprehensive plan was relied upon by the board, the Levins argue that the Authority failed to establish that there was a need for the project within Benner Township (Township). We disagree.

It is clear from the board's decision that it considered the 1969 comprehensive plan, the plan which was in effect when the Authority's application for a conditional use was under consideration by the board. R. at 670a–72a. In addition, the board considered a study prepared for the Township by the Local Government Research Corporation which reported that a survey found that the issue of an adequate water supply was of vital concern to the residents. R. at 922a–69a. The study recommended and concluded that the water supply must be an integral part of growth planning of the community. *Id.* Accordingly, the board's conclusion that the Authority established a need for the proposed conditional use in the area is supported by substantial evidence.

Fourth, the Levins argue that the Authority failed to satisfy the fifth criterion found in section 613(b)(5) of the zoning ordinance requiring that the use not detract from the permitted uses in the district. The Levins contend that the district is actually predominantly agricultural and there was substantial testimony that the use could have a deleterious effect on agriculture. Further, the Levins argue, the project requires the storage of hazardous chemicals such as chlorine gas that could have an extremely harmful effect on the surrounding area.

We note that the Levins' arguments are based on potential problems that may occur in the future. The board recognized in its decision the danger of chlorine gas. R. at 676a. As a result, the board imposed a protective condition requiring the Authority to place an automated audible chlorine alarm in each building containing chlorine to warn residents in the case of leakage, and a separate sensory alarm to notify both the Authority and emergency authorities in the event of leakage. R. at 682a. The Authority has not challenged the imposition of this condition.

As pointed out by the board in its decision, the proposed use is specifically permitted as an essential service by conditional use; therefore, it is deemed to be legislatively determined that the use is compatible with the C–A District. R. at p. 672a. In addition, the board concluded that the proposed facilities would not detract from other permitted or actual uses in the C–A District. *Id.* A review of the record reveals that the board's determination is supported by substantial evidence.

Finally, the Levins argue that the Authority itself proposed no safeguards as required by section 613(b)(6) of the zoning ordinance. Criterion number 6 provides that sufficient safeguards, such as parking, traffic control screening and setbacks can be implemented to remove any potential adverse influences the proposed use may have on adjoining uses. The Levins argue that this section of the ordinance places the burden upon the applicant to insure that its conditional use will have no adverse impact on the surrounding uses, and the Authority did not even attempt to meet that burden.

The language of criterion number 6 found in section 613(b)(6) of the zoning ordinance states that safeguards can be implemented. This indicates that safeguards need not be implemented if none of the potential adverse influences exist. It is within the board's discretion to determine whether safeguards should be implemented from the evidence presented in support of the application. This discretion may obviously be carried out through the imposition of reasonable conditions requiring the applicant to implement needed safeguards.

Accordingly, we conclude that the grant of the conditional use to the Authority by the board is supported by substantial evidence. *See* R. at 17a–310a; 312a–657a. Moreover, the board did not err in concluding that the Authority satisfied the specific criteria for the grant of the conditional use.

## II. WHETHER THE CONDITIONAL USE WILL ADVERSELY IMPACT ON THE PUBLIC INTEREST

■ Having determined that the grant of the conditional use is supported by substan-

tial evidence, we next address the issue of whether the Levins, as objectors, met their burden of showing, to a high degree of probability that the proposed conditional use will adversely impact on the health, safety and welfare of the public. *Achey Appeal,* 86 Pa.Cmwlth. 385, 484 A.2d 874 (1984), *aff'd,* 509 Pa. 163, 501 A.2d 249 (1985). The mere possibility of adverse impact is not enough. *Id.*

The Levins, as objectors, argue that they met their burden of proving that the proposed use will adversely impact on the public interest to a greater degree than other essential services. The Levins contend that the most obvious adverse impact is that no one, including the Authority's own experts, can be sure of the effect of the operation of the wellfield on the wells of adjacent and nearby property owners, all of whom are totally dependent upon wells for their water. Another adverse impact, the Levins contend, is the storage and use of hazardous chemicals such as chlorine and fluorides. The Levins argue that these dangers are not merely speculative and when the record is read as a whole it is clearly established that the danger is probable.

The board found that the adverse impact to the public interest, raised by the Levins with respect to the effect of the wellfield on the operation of adjacent wells was speculative. R. at 677a. With respect to the danger from chemicals, as discussed above, the board imposed condition number 12 requiring an automated audible chlorine alarm in each building to warn of any leakage of chemicals. R. at 682a. In addition, the board concluded that any potential detriments to the public interest were adequately addressed by (1) the Authority's policies and procedures of operation; (2) state law and regulations; (3) ordinance requirements; and (4) the conditions attached to the approval of the conditional use. R. at 677a, 679a.

A review of the record reveals that the board's findings and conclusions with regard to the potential adverse impacts are supported by substantial evidence. Accordingly, the Levins failed to meet their burden of proving that the conditional use will adversely impact on the public interest.

## III. WHETHER THE SIX CHALLENGED CONDITIONS IMPOSED ON THE GRANT OF THE CONDITIONAL USE ARE REASONABLE

■■■ As pointed out by this court in *Benner I,* the board herein, as the governing body, may,[8] pursuant to section 603(c)(2) [9] of the Pennsylvania Municipalities Planning Code (MPC), attach such reasonable conditions and safeguards, in addition to those expressed in the zoning ordinance, as it may deem necessary to implement the purposes of the MPC in the zoning ordinance. *Benner I,* 645 A.2d at 394.

### A. PREEMPTION

With respect to the challenged conditions, the Authority first argues that conditions 1, 2, 3, 4, 5 and 14 exceed the board's legal authority and are preempted. Specifically, the Authority argues that conditions 1 through 5 and 14 are preempted by the Susquehanna River Basin Compact[10] (Compact) and that conditions 3, 4, 5, and 14 simultaneously contravene the Municipality Authorities Act of 1945 (MAA).

Before we address the Authority's arguments with respect to preemption, we must first address two separate but related arguments raised by the Levins and the board. The Levins contend that the Authority's preemption arguments have been waived and the Board contends that the Authority has violated Pa.R.A.P.1921 by attaching a decision of the Susquehanna River Basin Commission to its brief.

---

8. The governing body within the provisions of the MPC is the township commissioners or supervisors or borough councilmen. *Commonwealth v. Bucks County,* 8 Pa.Cmwlth. 295, 302 A.2d 897 (1973).

9. 53 P.S. § 10603(c)(2).

10. Act of July 17, 1968, P.L. 368, *as amended,* 32 P.S. §§ 820.1—820.8. The Compact was entered into by the United States of America and the States of Maryland, New York and the Commonwealth of Pennsylvania to preserve the water resources of the Susquehanna River Basin. 32 P.S. § 820.1. The Susquehanna River Basin Commission was created by the Compact. *Id.*

## 1. WAIVER

■ The Levins contend that the Authority cannot now argue that the board's power to impose the challenged conditions is preempted by the Compact and the MAA because it failed to raise these issues below. The Levins argue that the Authority never raised the issues of preemption in the many proceedings before the board and, in its original notice of appeal to the trial court, the Authority raised a preemption issue only as it applied to the monitoring of wells imposed in condition 1 of the board's decision.

In response, the Authority argues that (1) issues relating to the board's power to impose the particular conditions were not before the board, since the conditions being appealed had not yet been imposed; (2) although not required to do so, the Authority specifically raised in the hearings before the board, the issues of preemption and the power of the board to impose conditions related to water withdrawals and system operation; (3) the Authority preserved the issues of preemption before the trial court and this court in both the prior and present appeals; and (4) the preemption issues relate to the subject matter jurisdiction of the board and could not be waived. Moreover, the Authority argues, this court's prior ruling in *Benner I* specifically recognized the Authority's right to raise these issues in this present appeal.

Pursuant to Pa.R.A.P. 302, issues not raised in the lower court are waived and cannot be raised for the first time on appeal. Our review of the record reveals that the Authority properly preserved the preemption issues below; therefore, the issues have not been waived.

We agree with the Authority that it had no duty to raise the issues of preemption before the board when no conditions had yet been imposed; however, the record of the proceedings before the board reveals that the Susquehanna River Basin Commission and its effect on the proposed use was discussed. R. at 36a–37a, 196a, 335a–36a, 392a–94a, 628a–29a. In addition, the Authority raised the issues of preemption in its initial notice of appeal to the trial court from the board's decision. R. at 685a–95a.

Generally, the Authority stated in that notice of appeal that the challenged conditions are beyond the scope of action which may legally be taken by a governing body under the applicable statutes and ordinances and that the challenged conditions are illegal and improper as a matter of law. R. at 690a, 695a. While it is true that the Authority only specifically mentions the Susquehanna River Basin Commission and DER, now known as DEP, with respect to condition 1 in its notice of appeal, we believe the entire notice of appeal is sufficient to preserve the preemption issues raised by the Authority in the present appeals.[11] Moreover, the Authority also preserved the preemption issues in its statement of issues presented to this court when it first appealed to this court from the trial court's February 8, 1993 order. Upon determining that the matter had to be remanded in *Benner I*, we permitted the Authority to appeal the same issues, in whole or in part, depending on the determination made by the trial court on remand. *Benner I*, 645 A.2d at 400. Accordingly, we hold that the Authority has not waived its arguments with respect to preemption for failure to raise the issues below or on appeal.

## 2. VIOLATION OF PA.R.A.P.1921

■ The board contends that the Susquehanna River Basin Commission's decision which was attached to the Authority's principal brief in this matter was not part of the record considered by either the board or the trial court. Therefore, the Authority has violated Pa.R.A.P.1921 by attaching the decision to its brief.

Pa.R.A.P.1921 provides that the original papers and exhibits filed in the trial court, the transcript of proceedings and a certified copy of the docket entries prepared by the clerk of the trial court shall constitute the record on appeal in all cases. This rule codified the practice that an appellate court may consider only the facts which have been duly certified in the record on appeal. *Com-*

---

**11.** Notwithstanding the preservation of the preemption issues before the trial court, the trial court chose not to address these issues in rendering its two decisions in this matter.

*monwealth v. Young,* 456 Pa. 102, 115, 317 A.2d 258, 264 (1974).

In this case, the Susquehanna River Basin Commission's decision was not available when the board conducted the hearings regarding the Authority's conditional use application; therefore it was not introduced as part of the record before the board. The board's decision in this matter was rendered on December 17, 1991. The Susquehanna River Basin Commission's decision at issue herein was issued on January 23, 1992. The Susquehanna River Basin Commission's decision approves the Authority's application, subject to certain conditions, to withdraw 4.7 million gallons per day of ground water from wellfield number 6, the area covered by the conditional use granted herein, for distribution in the Authority's public water supply system.

The Authority contends that this court may consider the Susquehanna River Basin Commission's decision regardless of whether it was offered formally as evidence before the board. The Authority argues that the decision is not evidence *per se* but an adjudication by a Federal interstate agency.

The Susquehanna River Basin Commission, pursuant to the Compact, is empowered as a single administrative agency, to oversee water resources in the Susquehanna River Basin and must approve of all the projects affecting those water resources. Article 3 of the Compact, § 3.10, 32 P.S. § 820.1. As evidenced by the record herein and the board's decision, it is clear that before the Authority may proceed with the proposed conditional use, the Authority must obtain the necessary approval from the Susquehanna River Basin Commission. R. at 663a, 674a, 682a; *see also State College Borough Water Authority v. Board of Supervisors of Halfmoon Township, Centre County, PA,* 659 A.2d 640, 643 n. 4 (Pa.Cmwlth.1995) (*Halfmoon Township*) (Benner Township, like Halfmoon Township, is located in Centre County, Pennsylvania and is likewise under the Susquehanna River Basin Commission's auspices).

In *Givnish v. State Board of Funeral Directors,* 134 Pa.Cmwlth. 146, 578 A.2d 545 (1990), this court denied, in part, an application for relief in the nature of a motion to strike petitioner's brief because it contained reference to facts not of record in the case. Specifically, the petitioner in *Givnish* requested, *inter alia,* that this court preclude consideration of an order issued by the Independent Regulatory Review Commission and a regulation passed by the State Board of Funeral Directors subsequent to the decision in the case. This court declined to preclude consideration based on the proposition that this court may take judicial notice of the subsequent order and regulation. *Givnish,* 578 A.2d at 548, citing *Edelbrew Brewery, Inc. v. Weiss,* 170 Pa.Superior Ct. 34, 84 A.2d 371 (1951).

Accordingly, we will take judicial notice of the Susquehanna River Basin Commission's decision and order issued on January 17, 1992.

## 3. PREEMPTION—SUSQUEHANNA RIVER BASIN COMPACT

Relying on this court's recent decision in *Halfmoon Township,* the Authority argues that the challenged conditions to its conditional use are preempted by the Compact and invade the exclusive regulatory province of the Susquehanna River Basin Commission.

In *Halfmoon Township,* the Authority applied for a conditional use to develop three wells in Halfmoon Township. Hearings were held during which time the Authority also filed permit applications with DER and the Susquehanna River Basin Commission for permission to withdraw 3.88 million gallons of water per day from the three wells. On March 25, 1993, DER gave the Authority permission to develop the three wells. On May 13, 1993, the Susquehanna River Basin Commission granted the Authority permission to withdraw the requested amount of ground water from the three wells. No appeal was taken from the Commission's decision.

On August 12, 1993, the board of supervisors of Halfmoon Township approved the Authority's conditional use application with ten conditions. The Authority appealed to

the trial court from the imposition of conditions 4, and 6—10.[12]

The trial court sustained the Authority's appeal and struck conditions 4 and 6–10. The trial court decided that the board of supervisors' " 'imposition of additional conditions . . . constituted an impermissible collateral attack' on the [Susquehanna River Basin] Commission's decision and that DER and the Commission 'have the exclusive power to allocate water and regulate the use of water for the public good.' " *Halfmoon Township,* 659 A.2d at 642 (citing *State College Water Authority v. Board of Supervisors of Halfmoon Township, Centre County, Pa.* (No. 1993–2495, filed August 19, 1994), slip op. at 4).

The board of supervisors appealed the trial court's order striking the challenged conditions to this court. On appeal to this court, the board raised the issue of whether the state legislature, by way of DER and the Compact, totally preempted regulation of the use of water for the public good. After examining the preamble to the Compact, the findings and declarations of the signatory parties' legislative bodies, this court opined that:

> Clearly then, as the Authority maintains, Congress and our state legislature created the Commission in no small part to combat chaos and fragmentation in the management of the basin's water resources. As the Authority also asserts, the Commission, as the single administrative agency empowered to oversee these resources, must approve of all the projects affecting

them, subject to certain exceptions not relevant here. Article 3 of the Compact, § 3.10. Such a grant of authority vests the Commission with control over all the water resources within its jurisdiction, and defeats any notion that local governing bodies, such as the Board in this case, may attach conditions to a project it has approved.

. . . .

> Our reading of the Compact as a whole satisfies us the state legislature indicated an intention that local governing bodies should not supplement the Commission's decisions with respect to its authority to manage the basin's water resources. No other conclusion is logical where the Compact evinces a frustration with splintered governmental authority and responsibility, and where the Commission has been given the power to regulate water withdrawals and diversions and to determine what areas should be designated as protected or involved in an emergency situation. *See* Article 11 of the Compact.

*Id.* at 644.

This court pointed out in *Halfmoon Township* that the Susquehanna River Basin Commission's decision approving the Authority's application for a permit to withdraw groundwater required that the Authority follow the reporting requirements set forth in 18 C.F.R. § 803.62 [Ground-water withdrawals] and the conservation requirements enunciated in 18 C.F.R. § 803.63 [Water Conservation requirements] for public water supply utilities.

---

12. These conditions provided as follows:
 4. The Applicant will agree to repair, deepen or replace any well in service in Halfmoon township as of December 14, 1992, which goes dry or experiences turbidity problems after the Applicant commences pumping from its well.
 6. Prior to pumping in excess of 1.75 mgd, the Applicant will provide interconnects at Applicant's expense to a main line of the following systems:
 a. Upper Halfmoon Water Company, Inc.;
 b. Sawmill Acres;
 c. Bellefonte Borough.
 7. In the event of dewatering of any of the above systems, after the interconnect is in place, the Applicant must agree to supply water to the dewatered system at the system's cost.

8. Evidence of interconnect agreements guaranteeing that the Borough of State College will supply water to any dewatered supplier at that supplier's cost.
 9. All interconnects shall be done at the expense of the State College Borough Water Authority and with pipe of sufficient size to supply the above water suppliers' patrons with their daily requirements in the event of dewatering.
 10. In the event that the pumping limit of 1.75 mgd is declared invalid, it is the decision of the Supervisors that the interconnects be completed prior to any use of the well.
 *Halfmoon Township,* 659 A.2d at 641–42.

*Id.* We also pointed out that the Susquehanna River Basin Commission reserved the right, based upon new findings, to reopen any project docket and make additional orders that may be necessary to mitigate or avoid adverse impacts or otherwise protect the public health, safety or welfare. *Id.* Thus, we stated that this provision for relief by the Susquehanna River Basin Commission afforded any residents of Halfmoon Township or any township or borough with a public water system who may encounter problems because of the three new wells a forum for protection and remedy from such problems. *Id.*

Accordingly, we held that conditions placed on the grant of a conditional use application by a local governing body subject to the Susquehanna River Basin Commission's authority, which conditions interfere with the Susquehanna River Basin Commission's power to regulate area water resources, are preempted. *Id.* at 645. A review of the challenged conditions in *Halfmoon Township* in light of this holding resulted in this court affirming the trial court's order striking the challenged conditions. *Id.* We determined that the conditions imposed by the board were all commendable efforts to protect against *future* interference with wells in Halfmoon Township or with certain public water systems. *Id.*

In the present case, the Authority argues that the conditions it is challenging, imposed on the grant of its conditional use application, are similar to the conditions that this court found were preempted by the Compact in *Halfmoon Township.* The Authority contends that the six challenged conditions all interfere with the Susquehanna River Basin Commission's authority to regulate area water resources. We agree.

In its decision approving the Authority's application to withdraw groundwater in the Township, the Susquehanna River Basin Commission specifically found that:

> No adverse impacts on other area ground-water withdrawals are anticipated. With the conditions included below, the project does not conflict with nor adversely affect the Comprehensive Plan, is physically feasible, and does not adversely

influence the present or future use and development of the water resources of the basin.

Brief of State College Water Authority, Appendix A—Certified Copy of Decision of the Susquehanna River Basin Commission at 3.

The conditions imposed by the Susquehanna River Basin Commission on the approval of the Authority's application to withdraw ground-water in the Township provide that:

> 1. The [Authority] shall comply with the [Susquehanna River Basin Commission's] ground-water reporting and conservation requirements as per Commission regulations [18 C.F.R. § 803.62 and § 803.63(a) ], respectively.
>
> 2. Should the ... monitoring data show a measurable impact on Benner Spring, the [Susquehanna River Basin] Commission will consider whether to impose restrictions on the quantity of water that may be withdrawn from Wellfield No. 6. Any restrictions imposed by the [Susquehanna River Basin] Commission will be based on a consideration of all competing uses.
>
> 3. This action does not obviate the need for the [Authority] to obtain any other federal, state, or local approvals required for the project.
>
> 4. The [Susquehanna River Basin] Commission reserves the right, based upon new findings, to reopen any project docket and make additional orders that may be necessary to mitigate or avoid adverse impacts or otherwise to protect the public health, safety, or welfare.

*Id.*

Conditions 1, 2, 3, 4, and 14 imposed by the board on the grant of the conditional use all require the Authority to monitor surrounding wells, reduce draw if the monitoring so requires, provide water in the event of well failure, and install a metered water station. Condition 5 is contingent on conditions 2 and 3.

However, the requirements of these challenged conditions are all governed by the Susquehanna River Basin Commission's regulations found in Chapter 18 of the Code of Federal Regulations. The standards for

ground-water withdrawal, 18 C.F.R. § 803.43, provide that after obtaining approval for the withdrawal, the sponsor shall also comply with metering, monitoring and reporting requirements as set forth in 18 C.F.R. § 803.43(a)(3).[13]

The metering requirement provides that approved projects shall meter all approved ground-water withdrawals and that the meters shall be accurate to within 5 percent of the actual flow. 18 C.F.R. § 803.43(c). The monitoring and reporting requirements provide for the monitoring and periodic reporting of water levels, well production, and ground-water quality of all approved ground-water withdrawals. 18 C.F.R. § 803.43(d)(1).

For example, the regulations provide that ground-water levels shall be measured weekly in all approved production wells and reported to the Susquehanna River Basin Commission annually. 18 C.F.R. § 803.43(d)(1)(i). In addition, 18 C.F.R. § 804.20 provides that when circumstances warrant, a public water supplier shall, *inter alia*, install meters for all users and encourage water conservation.

Accordingly, the requirements imposed by the six conditions challenged herein on the area's water resources are subject to regulation by the Susquehanna River Basin Commission; therefore, the imposition of the conditions by the board is preempted by the Compact and the promulgated regulations. *Halfmoon Township.*

As recognized by this court in *Halfmoon Township*, to permit the imposition of the conditions by the board in its desire to protect the Township's residents, would result in a splintering of authority and responsibility, the very mischief the Susquehanna River

Basin Commission was designed to remedy. *Id.* at 645. This would be particularly true if the Susquehanna River Basin Commission later decides to reopen the project docket and make additional orders to mitigate or avoid adverse impacts or otherwise to protect the public health, safety, or welfare. *See* Brief of State College Water Authority, Appendix A—Certified Copy of Decision of the Susquehanna River Basin Commission at 3.

 The Levins and the board argue that the Authority agreed to the imposition of the conditions on the record; therefore, the imposition of the conditions must be upheld by this court. The Levins argue that the Authority specifically agreed to conditions 1, 3, and 4 and implicitly agreed to condition 2. The board argues that the Authority agreed to all six challenged conditions through the testimony of Paul Fisher, the manager of the Authority, and Dr. Richard Parizek.[14]

 The trial court upheld the imposition of these conditions on the basis that the Authority agreed to their imposition. The Authority argues that it did not agree to the imposition of the challenged conditions and that no legal authority exists to support the argument that a preempted condition can be imposed by agreement.

To support their arguments, the Levins and the board rely on this court's decision in *Clinton County Solid Waste Authority v. Wayne Township*, 164 Pa.Cmwlth. 632, 643 A.2d 1162 (1994). In *Clinton County*, this court reviewed the imposition of certain conditions on the grant of a conditional use to operate a demolition waste landfill with the principle in mind that any conditions which

---

**13.** On June 15, 1995, effective May 11, 1995, the provisions of 18 C.F.R. § 803.62 and 18 C.F.R. § 803.63 were removed and are now found at 18 C.F.R. § 803.43 [Standards for ground-water withdrawals] and 18 C.F.R. § 804.20 [Water Conservation Requirements]. *See* Susquehanna River Basin Commission, 60 Fed.Reg. 31,391 (1995).

**14.** We note that the board is relying on the testimony of Dr. Parizek to support its argument that the Authority agreed to the imposition of the six challenged conditions. It is clear from the record that Dr. Parizek testified before the board as a witness for the objectors, the Levins. While

the board on appeal herein describes Dr. Parizek as an employee and consultant of the Authority, the Authority argues that his testimony in no way binds the Authority because Dr. Parizek was called as an expert witness for the objectors.

We agree with the Authority. Therefore, Dr. Parizek's testimony does not bind the Authority with respect to an agreement regarding the imposition of any of the challenged conditions.

In addition, we will not affirm the imposition of condition 2 on the basis that the Authority *implicitly* agreed to this condition on the record as argued by the Levins.

the Wayne Township Board of Supervisors wished to impose upon the conditional use pursuant to its authority under section 603(c)(2) of the MPC which were not regulated by the applicable laws and regulations of the DER must be upheld if the conditions were reasonably related to the health, safety or welfare of the public. *Clinton County,* 643 A.2d at 1169. The Wayne Township Zoning Ordinance required that sanitary landfills, in districts where authorized as a conditional use, shall be regulated by the applicable laws of the DER. *Id.* at 1164 n. 2.

Thereafter, we affirmed the imposition of condition 14 requiring the installation of a fire hydrant on the basis that the Clinton County Solid Waste Authority had agreed to the condition *and* that the condition was not inconsistent with DER regulations. *Id.* at 1172. Further, we affirmed the imposition of condition 1 precluding the use of a public road on the basis that the Clinton County Solid Waste Authority had agreed to the condition; however, there was no DER regulation governing the requirements of that condition. *Id.* at 1169.

The Levins and the board rely on this court's affirmance of the conditions in *Clinton County* on the basis of agreement as a steadfast rule that any time an applicant agrees to the imposition of a condition then that applicant is bound by that agreement. However, the Levins and the board ignore the fact that this court first reviewed the conditions at issue in *Clinton County* to determine whether the conditions were inconsistent with DER laws and regulations. When the conditions were, in fact, inconsistent, the issue of whether the Clinton County Solid Waste Authority agreed to the condition at issue never arose. *Clinton County.*

In the present case, we have already determined, after a review of the applicable federal regulations, that the six challenged conditions are preempted by the Compact and the Susquehanna River Basin Commission's regulations. As stated above, to permit the imposition of the conditions by the board would result in a splintering of author-

ity and responsibility, the very mischief the Susquehanna River Basin Commission was designed to remedy. To now permit the imposition of the challenged conditions solely on the basis that the Authority agreed would defeat this purpose.

Accordingly, we hold that the trial court erred in upholding the imposition by the board of the six challenged conditions on the grant of the conditional use to the Authority.[15] In addition, as this court hastened to add in *Halfmoon Township,* "this opinion in no way serves as insulation for the Authority from liability for problems it may cause by the pumping of its well[s]." *Halfmoon Township,* 659 A.2d at 645.

### ORDER

NOW, this 28th day of December, 1995, the order of the Court of Common Pleas of Centre County, dated January 17, 1995, at Nos. 92–40 and 92–147 is hereby:

1. Affirmed with respect to the order's affirmance of the granting of the conditional use application by the Board of Supervisors of Benner Township to the State College Borough Water Authority; and

2. Reversed with respect to the order's affirmance of conditions 1, 2, 3, 4, 5, and 14 imposed by the Board of Supervisors of Benner Township upon the conditional use application.

---

**15.** Because we have held that the principle of preemption applies, we need not reach the re-

maining issues raised on appeal.