165 Pa. Commonwealth Ct. 405 (1994)
645 A.2d 394
STATE COLLEGE BOROUGH WATER AUTHORITY, Appellant,
v.
BOARD OF SUPERVISORS OF BENNER TOWNSHIP, CENTRE COUNTY, Pennsylvania.
Eric J. LEVIN, Christine F. Levin
v.
BOARD OF SUPERVISORS OF BENNER TOWNSHIP, CENTRE COUNTY, Pennsylvania and State College Borough Water Authority and Daniel E. Shawley, Karen S. Shawley, Bibles for the World, Inc.
Commonwealth Court of Pennsylvania.
Argued December 13, 1993.
Decided June 28, 1994.
*406 R. Timothy Weston, for appellant.
Ben Novak, for appellee Tp. of Benner.
David C. Keiter, for appellees Eric J. and Christine F. Levin.
Before COLINS and KELLEY, JJ., and SILVESTRI, Senior Judge.
SILVESTRI, Senior Judge.
This is a consolidated appeal by the State College Borough Water Authority (Authority) from the February 8, 1993 order of the Court of Common Pleas of Centre County (trial court). The trial court, on the appeal by Eric J. Levin and Christine F. Levin, intervenors, reversed the decision of the Board of Supervisors of Benner Township (Board) granting the Authority's conditional use application. This appeal by the Authority is docketed at 492 C.D.1993. The Board had imposed sixteen (16) conditions on the grant of the conditional use to the Authority; the Authority appealed the validity of six (6) of the sixteen (16) conditions to the trial court. The trial court by reason of its reversal of the decision of the Board did not address this appeal by the Authority. The Authority has appealed the validity of the six (6) conditions. This appeal is docketed at 491 C.D. 1993.
The facts and procedures giving rise to the within appeals are as follows. On May 10, 1990, the Authority filed an application for a conditional use of its property, being Lots W-101 *407 through W-105 (R.R. Vol. I, 8a), with the Board. The proposed use of the lots, as set forth in the application was
to erect service buildings for the pumping, treatment and distribution of well water. The water sources have currently been drilled, lined and capped.
(R.R. Vol. I, 6a.)
The lots are located in the Airport Commercial Zoning District (C-A District).[1]
The Board conducted several hearings spawning a period from September 4, 1990 through December 10, 1991. On December 17, 1991, it filed its findings of fact, conclusions of law and decision. As herein relevant, the Board made the following findings of fact.
2. The (Authority's) water service area includes most of State College Borough, and parts of College, Harris, Ferguson and Patton Townships.
. . . .
4. The average daily water demand of the (Authority's) system is 4.53 million gpd. . . .
. . . .
7. (Authority) filed a request for approval of a conditional use on the lots. The proposed use of the lots is to operate a well pumping field to pump water from 3 wells drilled on the lots, to treat the water, and to pump it through pipes to be laid along Airport Road and Foxhill Road, to a connection *408 with (Authority's) presently existing water distribution system. The proposed use contemplates drilling for subterranean or percolating water which is to be pumped to the surface and piped away from the property to supply the public water system of the (Authority).
8. . . . . The estimated top capacity of the wellfield is 4.6 million gpd.
. . . .
12. It was testified by experts that the proposed pumping operation could possibly have an affect upon water wells located on other properties in the Township. Most occupied properties in the Township are supplied by on-site well water.
. . . .
15. (Authority) offered and agreed that if any well within the recharge area (as defined in Paragraph 13 above), goes dry or is dewatered after operation of the wellfield commences, it shall be presumed to go dry by reason of the operation of the wellfield and (Authority) shall immediately supply temporary water service within 48 hours and shall extend water mains and all necessary connections to the property at no cost to the property owner. The residents after connection shall pay standard water rates as customers of the (Authority).
. . . .
19. The (Authority) intends to drill wells and pump water from the subterranean and percolating waters under the lands of (Authority), and to transfer the water away, off the lands, into the public water system of the (Authority) to be supplied to meet the water supply needs of the customers of the (Authority).
(R.R. Vol. III, 466a-470a.)
The Board, in its decision, imposed conditions on the grant of the Authority's conditional use. The Authority challenges the following six (6) imposed conditions.
1. Monitoring. (Authority) agrees to monitor all wells within one and one half (1½) miles of the well site for any *409 landowner who requests such monitoring. (Authority) shall advertise in a newspaper of general circulation in the Township its offer to install monitoring devices once each year for three successive years. (Authority) shall also send notice to every landowner within one and one half (1½) miles of the well site offering to install a monitoring device at the expense of (Authority). Such monitoring devices shall be installed upon consent of the landowner for a period of 18 months, and shall be renewable as of right for successive periods at the request of the landowner. Any landowner within the one and one half (1½) miles radius may request monitoring at any time. The Township and the property owner shall be supplied the results of the monitoring. All monitoring devices, installation costs, periodic monitoring, and reporting costs shall be at the expense of (Authority).
2. Reducing Draw. If the monitoring of wells pursuant to Condition # 1 above reveals a falling of the water table sufficient to adversely effect wells on neighboring lands (or the Benner Spring or other springs of the Pennsylvania Fish Commission in Centre County), then the (Authority) shall reduce the draw of water from the proposed wellfield so as to prevent or cease the adverse effect upon the wells and springs of residents or landowners and the springs of the Pennsylvania Fish Commission.
3. Well Failure Within One and One Half (1½) Miles from Well Site. If any landowner's well within one and one-half (1½) miles of the well site fails because of the drop in water level, (Authority) shall provide temporary water service (water buffalo) within at least 48 hours of notice thereof at the cost of the (Authority). (Authority) also agrees that, unless it can be clearly shown by (Authority) that the well did not go dry by reason of (Authority's) well pumping operation, (Authority) shall extend lines from its well site to the property and connect to the residence or structure to be served, at the cost of (Authority), within three months or as soon as can reasonably be done. Said residents, after connection, shall pay standard water rates for water service.

*410 4. Wells Beyond One and One-Half Miles from Well Site. If wells within the one and one-half (1½) Miles radius go dry, it shall be presumed that wells beyond the one and one-half (1½) miles distance from the well site which go dry at the same time or thereafter shall be presumed to also go dry by reason of (Authority's) operation, and (Authority) shall immediately supply temporary water service within 48 hours of notification, and shall extend lines to said properties and connect to the residence or structure to be served to replace their water service within three months or as soon as reasonably possible, at the expense of (Authority). Such residents, after connection, shall pay standard water rates.
5. Agricultural Rates. Where landowners engaged in primarily agricultural pursuits are affected pursuant to Conditions 2 or 3 above, and water lines are extended to said landowners' farms to provide water for livestock or crops, said water shall be provided by (Authority) at fifty (50%) percent of the standard water rate.
. . . .
14. Water Station. (Authority) shall install at (Authority's) expense, a metered water station for residents or landowners to purchase or obtain water. Said water station shall be located at a location to be agreed upon by (Authority) and the Township within one year of designation of location.
(R.R. Vol. III, 483a-486a.)
The trial court noted that the separate appeals of Levin and the Authority raised three (3) issues, but disposed of both appeals solely on the issue of "[w]hether the Board was in error to grant the conditional use."
Hatfield Township v. Lansdale Municipal Authority, 19 Pa.D. & C.2d 281 (1959) was a class action in equity in which Hatfield sought to enjoin Lansdale from operating a well in that it was unlawful because it damages and impairs the private supplies of plaintiffs. After two (2) days of testimony, the trial was recessed and, by agreement of the parties, *411 Lansdale completed the drilling of the well and conducted a two-day pumping test so that the court could be presented with testimony as to the effect the well would have on the wells of the plaintiffs. As a result of the pumping test, three wells, all within 700 feet of the Lansdale well, became dry. The water level in other wells dropped and in some cases, the available water was clouded and dirty.
The Hatfield court then set forth the law of Pennsylvania relating to springs and wells from Rothrauff v. Sinking Spring Water Company, 339 Pa. 129, 14 A.2d 87 (1940), as follows:
The general rule is that when a spring or well is dependent on filtrations and percolations through the land of an adjoining landowner for its supply, and in the use of the water in the adjoining land for lawful purposes, the spring or well of the other is destroyed, the adjoining owner, in the absence of malice or negligence, is not liable for the damages thus occasioned: Rothrauff v. Sinking Spring Water Company, supra, at pages 132, 133 [14 A.2d 87]. This doctrine has been termed "the rule of reasonable user," and the key inquiry in its application is the scope of the limitation embodied in the phrase "in the use of the water for lawful purposes." The court in the Rothrauff case, after discussing and discarding the English rule of absolute appropriation, stated that the "use must be limited to purposes incident to the beneficial enjoyment of the land from which they are obtained, and if their diversion or sale to others away from the land impairs the supply of a spring or well on the property of another, such use is not for a `lawful purpose'. . . .": page 134 [14 A.2d 87]. (Emphasis in original.)
The Rothrauff decision adopted as the law of Pennsylvania the rule that
". . . a property owner may not concentrate such waters and convey them off his land if the springs or wells of another landowner are thereby damaged or impaired": page 134 [14 A.2d 87].

Hatfield, 19 Pa.D. & C.2d at 290-291.
*412 The Chancellor, 19 Pa.D. & C.2d at pages 296 and 297, then noted that the case before it involved a dispute "between private persons[2] on one side and a municipally owned corporation providing a public service on the other hand." The Chancellor further noted that the function of Lansdale in providing and maintaining a water supply system possesses important social value. The Chancellor observed that Lansdale is dependent upon wells for its water supply and competition for the available supply by many persons tends to be wasteful and expensive, then stated: "The Chancellor will protect the rights of plaintiffs but also would like to achieve a result whereby the authority is not foreclosed from available sources of water," and fashioned a decree as follows:
[I]t is ordered, adjudged and decreed that the Lansdale Municipal Authority be permitted to operate the well located in Hatfield Township on a portion of the Ridington tract, provided however, that on the request of any user or owner of a well within a radius of 1600 feet thereof, which well is in existence at the time the authority commences the operation of its aforesaid well, the authority shall install water mains, laterals, water meters and all other installations and connections without cost to the prospective customers and at the expense of the Lansdale Municipal Authority, the prospective customers only to pay the regular established rate of the authority for water consumed by them. Should the authority refuse or fail to comply with this condition, then in that event, an injunction shall issue, enjoining the Lansdale Municipal Authority from pumping water if said waters are to be used, distributed or transported off the land from which the water is obtained.

Hatfield, 19 Pa.D. & C.2d at 298-299.
On appeal by Lansdale, the Supreme Court[3] affirmed the decree of the trial court, stating:

*413 The lower court, mindful of the injury incurred on appellees, nevertheless took notice of the "municipal function and service performed by the Authority" and made the permanent injunction conditional upon appellant Authority's joining to its system without cost all interested injured parties within a radius of 1600 feet. . . . The determination of the lower court was well within the broad powers of a court of equity and will not be disturbed by our court.

Hatfield, 403 Pa. at 116, 168 A.2d at 334.
The trial court herein, although aware of the facts and the decree in Hatfield, and the affirmance thereof by the Supreme Court, noted that Hatfield was an action in equity involving a question of whether a permanent injunction should issue or an injunction with conditions was the proper remedy as the result of Lansdale's operation dewatering of neighboring wells, whereas in the instant case the issue was whether a conditional use application should be granted. The trial court further stated:
The Board premises the permissibility of their action based upon the factual scenario contained in Hatfield, but again this Court has not been requested to invoke its equitable powers of permanent or temporary injunction. Here the Court rules upon whether the Board has committed abuse of discretion or error of law in its grant of conditional use. The issue was not how to remedy the dewatering of neighboring wells by a water authority's ongoing operation.
See trial court opinion at p. 9.
The trial court concluded that "the Board has committed abuse of discretion and manifest error of law," and reversed the grant of the conditional use application with conditions, by the Board to the Authority.
On appeal here[4] the authority argues (1) that there was substantial evidence to support the grant of the conditional use application; (2) that the trial court committed an error *414 of law in holding that any transfer of water by a public water supply system for use off the land containing the well is unlawful and prohibited, and (3) the trial court erred in not ruling on the Authority's appeal of the validity of six (6) challenged conditions of the sixteen imposed on the grant of the conditional use.
It is true, as observed by the trial court, that it and the Board were not acting in an equitable proceeding, but instead were involved in a zoning proceeding under a zoning ordinance enacted pursuant to the Pennsylvania Municipalities Planning Code (MPC).[5] The MPC gave to zoning boards and governing bodies authority akin to the equitable powers of a court by virtue of the following MPC provisions:
Section 603.[6] Ordinance Provisions.
. . . .
(c) Zoning ordinances may contain
. . . .
(2) provisions for conditional uses to be allowed or denied by the governing body pursuant to public notice and hearing and recommendations by the planning agency and pursuant to express standards and criteria set forth in the zoning ordinances. In allowing a conditional use, the governing body may attach such reasonable conditions and safeguards, in addition to those expressed in the ordinance, as it may deem necessary to implement the purposes of this act and the zoning ordinance; . . . (emphasis added).
Section 604.[7] Zoning Purposes.
The provisions of zoning ordinances shall be designed:
(1) To promote, protect and facilitate any or all of the following: the public health, safety, morals, and general *415 welfare; . . . access to . . . water . . ., the provision of a safe, reliable and adequate water supply for domestic, commercial, agricultural or industrial use, and other public requirements; . . . .
Section 913.2.[8] Governing Body's Functions; Conditional Uses.
Where the governing body, in the zoning ordinances, has stated conditional uses to be granted or denied by the governing body pursuant to express standards and criteria, the governing body shall hold hearings on and decide requests for such conditional uses in accordance with such standards and criteria. In granting a conditional use, the governing body may attach such reasonable conditions and safeguards, in addition to those expressed in the ordinance, as it may deem necessary to implement the purposes of this act in the zoning ordinance. (Emphasis added.)
Clearly, the foregoing provisions of the MPC are legislative authority to the governing bodies authorizing modification of the Rothrauff rule, in granting a conditional use for the withdrawal of water from owned land for distribution and sale off the land by way of attaching reasonable conditions to such grant. Accordingly, the trial court committed an error of law in concluding that the Board lacked authority to impose conditions in modification of the Rothrauff rule.
By reason of the trial court's disposition, it did not dispose of the issues of whether there was substantial evidence to support the grant of the conditional use application by the Board to the Authority or whether the challenged six (6) conditions imposed by the Board on the grant of the conditional use are reasonable. Hence, we remand to the trial court for disposition of these two issues.

ORDER

No. 491 C.D. 1993
AND NOW, this 28th day of June, 1994, it is ORDERED that the appeal of State College Borough Water Authority is *416 dismissed without prejudice to appeal the same issues, in whole or in part, depending on the determination made by the Court of Common Pleas of Centre County of paragraph 2(b) of the Order entered at 492 C.D. 1993 of this same date.
Jurisdiction relinquished.

ORDER

No. 492 C.D. 1993
AND NOW, this 28th day of June, 1994, it is ORDERED as follows:
1. The order of the Court of Common Pleas of Centre County dated the 8th day of February, 1993, is reversed.
2. This case is remanded to the Court of Common Pleas of Centre County to determine the following issues.
(a) Whether there is substantial evidence to support the grant of the conditional use application by the Board of Supervisors of Benner Township to State College Borough Water Authority, and,
(b) Whether the conditions of 1. Monitoring, 2. Reducing Draw, 3. Well Failure Within One and One Half (1½) Miles from Well Site, 4. Wells Beyond One and One Half Miles from Well Site, 5. Agricultural Rates, and 14. Water Station, imposed on the grant of the conditional use are reasonable conditions.
Jurisdiction relinquished.
NOTES
[1] Ordinance No. ____ Section 506 relating to C-A District does not permit any use by right; the only uses are by conditional use. The conditional uses allowed, include, inter alia:

8. Essential Services
"Essential Service" is defined under Section 405f, as:
Facilities for the distribution of utility services including gas, electricity, water, sewerage, telephone and similar services where the facilities are owned and operated by a municipality, or municipal authority or public utility regulated by the Pennsylvania Public utility commission [sic].
Section 613 Conditional Uses and Special Exceptions
. . . .
b. Criteria for Conditional Uses or Special Exceptions
(There follow nine (9) criteria hereunder which "shall be used as a guide in evaluating a proposed conditional use.")
(R.R. Vol. I., 12a-15a.)
[2] The trial court had determined Hatfield Township was not a proper party to the action and dismissed it as a party plaintiff, 19 Pa.D. & C.2d at page 295.
[3] Township of Hatfield v. Lansdale Municipal Authority, 403 Pa. 113, 168 A.2d 333 (1961).
[4] Where the trial court takes no additional evidence subsequent to the Board's determination, our scope of review is limited to determining whether the Board committed a manifest abuse of discretion or an error of law. Pittsburgh v. Zoning Board of Adjustment, 522 Pa. 44, 559 A.2d 896 (1989). A conclusion that the Board abused its discretion may be reached only if its findings are not supported by substantial evidence. Id. Hoopes v. Zoning Hearing Board of Haverford Township, 134 Pa.Commonwealth Ct. 26, 578 A.2d 63 (1990).
[5] As reenacted by the Act of 1988, Dec. 21, P.L. 1329, 53 P.S. §§ 10101-11006A.
[6] 53 P.S. § 10603.
[7] 53 P.S. § 10604.
[8] 53 P.S. § 10913.2.